Cleave Andrew CARAWAY, Appellant

v.

STATE of Texas, Appellee.

No. 11–06–00115–CR.

Court of Appeals of Texas, Eastland.

April 3, 2008.

---

304

Benjamin Aaron Webb, Joel R. Cook, Law Offices of Wm. Everett Seymore, Lubbock, for appellant.

Tim W. Ford, Michael K. Burns, Dist. Atty., Palo Pinto, for State.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

Cleave Andrew Caraway appeals his conviction for the first degree felony offense of possession of cocaine in an amount of four hundred grams or more. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(f) (Vernon 2003). After the trial court denied appellant's motion to suppress evidence, appellant pleaded guilty to the offense. Pursuant to a plea bargain agreement, the trial court sentenced appellant to twenty-five years confinement and a fine of $5,000. In two appellate issues, appellant argues that the trial court erred in denying his motion to suppress (1) because the search of his vehicle resulted from an illegal detention and (2) because his consent to search the vehicle resulted from a violation of his Fourth Amendment rights. We affirm.

### Background

On August 31, 2005, at about 11:00 a.m., Department of Public Safety Trooper Jason Shea made a traffic stop of appellant because he believed that appellant's vehicle had illegal tint on its windows. Appellant does not challenge the legality of the reason for the stop. Trooper Shea was the only witness at the suppression hearing. The stop was videotaped by a camera in Trooper Shea's vehicle, and appellant introduced into evidence a copy of the video (in DVD format). The DVD contained audio and video of the stop.[1]

After stopping appellant, Trooper Shea walked to the passenger's side of appellant's vehicle as appellant remained seated in the driver's seat. The video showed that Trooper Shea first talked with appellant at 11:05:33. Trooper Shea told appellant that he wanted to check the window tint because it looked "a little bit dark." Trooper Shea also asked appellant for his driver's license and proof of insurance. Appellant responded by saying that he was going to a wedding. Trooper Shea asked appellant some background questions about the trip. Appellant told Trooper Shea that he had come from Lubbock and

---

1. The video showed that Trooper Shea stopped appellant at about 23:05. However, the evidence established that the stop occurred around 11:05 a.m. instead of 11:05 p.m.

that the wedding was in Dallas. Trooper Shea asked appellant what type of work he did, and appellant responded that he was a barber. Appellant gave Trooper Shea his driver's license. Trooper Shea said that appellant acted very nervous, had shaky hands, talked very rapidly, and failed to make eye contact with him. Trooper Shea tested the window on the passenger's side of appellant's vehicle with a window tint meter. The test showed that the window had tint darker than the legal limit. Trooper Shea then informed appellant that he was going to write appellant a warning for the window tint, as opposed to a citation.

Trooper Shea requested appellant to accompany him to his police vehicle so that he could write the warning. The video showed that Trooper Shea and appellant got into Trooper Shea's vehicle at 11:07:35. Once Trooper Shea and appellant were inside the vehicle, they could not be seen on the video. However, their voices could be heard on the audio portion. Trooper Shea testified that appellant continued to act nervously. At 11:08:30, Trooper Shea initiated an outstanding warrants check and a criminal history check on appellant by calling appellant's driver's license number into DPS communications over his radio. While Trooper Shea waited to receive the warrant and criminal history information, Trooper Shea and appellant talked about appellant's occupation as a barber. At 11:09:45, Trooper Shea asked appellant whether he had ever been arrested. At about the same time, Trooper Shea began receiving information about appellant's criminal history over the radio. Appellant told Trooper Shea that he had been arrested on conspiracy and drug charges in 1992 and that he had served four years in prison for the charges.

Trooper Shea testified that he asked appellant whether he could look in the car for anything illegal and that appellant said he could. The video established that, at 11:10:05, Trooper Shea asked appellant the following questions: "You don't have anything illegal in the car right now? Do you mind if I look and make sure? Is that okay?" The audio portion of the video did not demonstrate whether appellant gave a "yes" or "no" response to Trooper Shea's request for consent to search. Because Trooper Shea and appellant could not be seen in the video at the time of the request for consent to search, the video did not establish whether appellant nodded his head indicating that Trooper Shea could search the vehicle. However, the audio portion of the video established that, at 11:10:10, appellant stated the following: "It's my mom's truck. I don't have nothing." At 11:10:15, Trooper Shea exited his vehicle and walked to appellant's vehicle to search it. Appellant also exited Trooper Shea's vehicle and walked up beside Trooper Shea. The video showed that appellant actually conducted the search of the vehicle. Appellant showed Trooper Shea a number of items that he had in the vehicle. Trooper Shea testified that normally people do not walk up to the vehicle with him while he is conducting a search.

The video showed that, at 11:11:20, Trooper Shea and appellant got back into Trooper Shea's vehicle. Trooper Shea proceeded to write appellant a warning. At 11:11:55, Trooper Shea told appellant that it was a warning with no fine. Trooper Shea received more information about appellant's criminal history over the radio, and appellant told Trooper Shea that he had gone back to prison in 1999 for a "violation." The video showed that, at 11:12:30, Trooper Shea exited the vehicle. Appellant remained inside Trooper Shea's vehicle. Trooper Shea then searched the rest of appellant's vehicle. Trooper Shea testified that he found a United Supermarket bag, which he believed contained a

substantial amount of cocaine, in the back trunk area of appellant's vehicle. Trooper Shea placed appellant under arrest.

Trooper Shea sent the substance to the Abilene DPS crime lab for analysis. The report from the lab indicated that the substance contained approximately 1800 grams of cocaine.

During cross-examination, Trooper Shea testified that appellant was not free to leave when he asked appellant for consent to search the vehicle. He also testified that he would have called for a canine unit if appellant had refused consent to search.

After the conclusion of the evidence and arguments of counsel, the trial court denied appellant's motion to suppress. The trial court stated the following findings on the record: "that the evidence contain[ed] an articulated reasonable suspicion, which developed during the course of a valid initial detention, and that the consent given during the course of the detention was voluntary." The parties did not request written findings of fact and conclusions of law, and the trial court did not enter written findings of fact and conclusions of law.

### Standard of Review

■■■ A trial court's denial of a motion to suppress is reviewed for an abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App.2002). In reviewing a trial court's ruling on a motion to suppress, an appellate court must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex.Crim.App.2006). We must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim.App.2005); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Id.; Davila v. State*, 4 S.W.3d 844, 847–48 (Tex.App.-Eastland 1999, no pet.). We are obligated to uphold the trial court's ruling if that ruling was supported by the record and was correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex.Crim.App. 2003); *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App.2000).

### The Detention Was Reasonable

■■■ In his first issue, appellant contends that the purpose of the stop was completed before Trooper Shea asked for consent to search the vehicle. Therefore, appellant contends that he was being illegally detained at the time Trooper Shea requested his consent to search. Trooper Shea stopped appellant for a suspected window-tint violation. A traffic stop is a detention and must be reasonable under the United States and Texas Constitutions. *See Davis v. State*, 947 S.W.2d 240, 245 (Tex.Crim.App.1997). To be reasonable, a traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Davis*, 947 S.W.2d at 245. Reasonableness is measured in objective terms by examining the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); *Spight v. State*, 76 S.W.3d 761, 765 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

■■■ During a traffic stop, an officer may ask questions about the driver's destination and the purpose of the trip. *Willis*

*v. State,* 192 S.W.3d 585, 590–91 (Tex.App.-Tyler 2006, pet. ref'd); *Veal v. State,* 28 S.W.3d 832, 835 (Tex.App.-Beaumont 2000, pet. ref'd). An officer may also check for outstanding warrants and demand identification, a valid driver's license, and proof of insurance from the driver. *Kothe v. State,* 152 S.W.3d 54, 63 (Tex.Crim.App.2004); *Davis,* 947 S.W.2d at 245 n. 6; *Spight,* 76 S.W.3d at 766. While an officer is awaiting a computer warrant check, questioning about matters unrelated to the initial traffic stop does not violate the Fourth Amendment because such questioning does not extend the duration of an initial valid stop. *Willis,* 192 S.W.3d at 591. In some circumstances, however, extensive questioning about unrelated matters may exceed the scope of the initial stop. *Id.*

When the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Davis,* 947 S.W.2d at 243 (quoting *Robinette,* 519 U.S. at 41, 117 S.Ct. 417 (Ginsburg, J., concurring)). Once an officer concludes the investigation of the conduct that initiated the stop, continued detention of a person is permitted only if there is reasonable suspicion to believe another offense has been or is being committed. *Davis,* 947 S.W.2d at 245.

The evidence at appellant's suppression hearing established that Trooper Shea made a valid stop of appellant for a suspected window-tint violation. The video showed appellant pulling his vehicle off the road and stopping at 11:05:06. Trooper Shea approached appellant's vehicle and first talked with appellant at 11:05:33. Having made a valid traffic stop of appellant, it was reasonable for Trooper Shea to ask appellant questions about his destination and the purpose of the trip. *Willis,* 192 S.W.3d at 590–91; *Veal,* 28 S.W.3d at 835. It was also reasonable for Trooper Shea to check the validity of appellant's

driver's license and to check for outstanding warrants. *Davis,* 947 S.W.2d at 245; *Spight,* 76 S.W.3d at 766. The evidence showed that Trooper Shea initiated the warrants check and criminal history check at 11:08:30 by calling DPS communications. At 11:09:45, Trooper Shea began receiving information about appellant's criminal history over his police radio. The warrant check and criminal history check did not unreasonably prolong the purpose of the stop. As such, we find that it was reasonable for Trooper Shea to request the computerized check of appellant's criminal history. Less than a minute after receiving the information about appellant's criminal history, at 11:10:05, Trooper Shea requested appellant's consent to search the vehicle. At that time, Trooper Shea had not written the warning for the window-tint violation.

Trooper Shea asked for appellant's consent to search the vehicle less than five minutes after first making contact with appellant. There was no evidence that Trooper Shea failed to diligently pursue his investigation or that he delayed in writing the warning in an effort to prolong the stop. Based on the totality of the circumstances, Trooper Shea's detention of appellant was reasonable. Therefore, Trooper Shea requested appellant's consent to search the vehicle during a valid detention of appellant.

Appellant relies on three federal Fifth Circuit Court of Appeals cases in arguing that Trooper Shea completed the reason for the stop before requesting consent to search and that, therefore, the detention of appellant became illegal before Trooper Shea asked for consent to search: *United States v. Brigham,* 343 F.3d 490 (5th Cir. 2003), *vacated and reh'g en banc granted by* 350 F.3d 1297 (5th Cir.2003); *United States v. Santiago,* 310 F.3d 336 (5th Cir. 2002); and *United States v. Dortch,* 199

F.3d 193 (5th Cir.1999). In *Brigham*, the Fifth Circuit granted a rehearing en banc and vacated the panel opinion cited by appellant in this cause. *See* 350 F.3d 1297. The en banc court held that the defendant driver had not been illegally detained. *United States v. Brigham*, 382 F.3d 500, 512 (5th Cir.2004).

In *Brigham*, a DPS Trooper stopped the defendant for following too closely behind another vehicle. In the eight minutes following the stop, the trooper questioned the driver and the other occupants of the vehicle. The trooper then initiated computer checks on the vehicle and on three identification cards that he had received from occupants of the vehicle. About thirteen minutes later, the trooper requested and obtained the defendant's consent to search the vehicle. *Brigham*, 382 F.3d at 504–05. A majority of a three-judge panel of the Fifth Circuit held that the trooper had unconstitutionally extended the traffic stop by questioning the defendant before initiating the computer checks on the vehicle and the identification cards. The panel majority also held that the defendant's consent to search was involuntary because it had been tainted by the illegal detention. *Brigham*, 343 F.3d at 505–06.

In the en banc opinion in *Brigham*, the Fifth Circuit analyzed its earlier decisions in *Santiago* and *Dortch*. *Brigham*, 382 F.3d at 510. The Fifth Circuit stated that *Santiago* and *Dortch* involved the following sequence of events: (1) patrol officers made initially valid traffic stops; (2) the officers obtained negative results on computerized checks; and (3) the officers continued to detain the drivers without reasonable suspicion until receiving consent to search the vehicles. *Id.* The *Brigham* court explained its holdings in *Santiago* and *Dortch* as follows:

> The cases are about timing and sequence: after computer checks came up

"clean," there remained no reasonable suspicion of wrongdoing by the vehicle occupants. Continued questioning *thereafter* unconstitutionally prolonged the detentions.

*Id.*

In *Brigham*, the en banc court concluded that the trooper had not illegally detained the driver by questioning him before initiating the computer checks. The court noted that questions about "the purpose and itinerary of a driver's trip during the traffic stop" are "within the scope of investigation attendant to the traffic stop." *Id.* at 508. The court also explained that officers may undertake such questioning before initiating a computer check. *Id.* at 511 ("[N]either our prior cases nor any other caselaw of which we are aware institutes a per se rule requiring an officer immediately to obtain the driver's license and registration information and initiate the relevant background checks before asking questions."). The *Brigham* court held that the trooper's investigative methods had been reasonable and that, therefore, the detention of the defendant had not violated the Fourth Amendment. The court also held that, in the absence of an illegal detention, the driver's consent to search the vehicle had not been unconstitutionally tainted. *Id.* at 511–12.

*Brigham* supports the conclusion that Trooper Shea's actions were reasonable. Trooper Shea did not delay in running the computer checks on appellant. He initiated the checks about three minutes after he first talked to appellant. He began receiving information about appellant's criminal history over the radio about a minute and fifteen seconds later. In the next minute, Trooper Shea asked appellant a few questions about his 1992 arrest and then asked appellant for consent to search. This case is distinguishable from *Dortch* and *Santiago* because Trooper Shea did

not engage in prolonged questioning of appellant after receiving "clean" computer checks.

Trooper Shea did not illegally detain appellant. We overrule appellant's first issue.

### Appellant's Consent to Search Was Voluntary

■ In his second issue, appellant contends that the trial court erred in denying his motion to suppress because his consent to search resulted from an illegal detention. However, we have ruled above that Trooper Shea did not illegally detain appellant.

■ Consent to search operates as an exception to the Fourth Amendment's warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Ibarra*, 953 S.W.2d 242, 243 (Tex.Crim.App. 1997); *Myers v. State*, 203 S.W.3d 873, 886 (Tex.App.-Eastland 2006, pet. ref'd). The consent must be voluntarily given to be considered effective, and voluntariness is a question of fact to be determined from the totality of the circumstances. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex.Crim. App.2000); *Myers*, 203 S.W.3d at 886. To be valid, consent must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Carmouche*, 10 S.W.3d at 331 (quoting *Schneckloth*, 412 U.S. at 228, 93 S.Ct. 2041). The United States Constitution requires the State to prove voluntariness of consent by a preponderance of the evidence. *Carmouche*, 10 S.W.3d at 331. The Texas Constitution requires the State to show by clear and convincing evidence that the consent was freely given. *Id.; Myers*, 203 S.W.3d at 886. If the record supports a finding by clear and convincing evidence that the consent to search was freely and voluntarily

given, we will not disturb that finding. *Carmouche*, 10 S.W.3d at 331.

Trooper Shea testified that appellant said he could search the vehicle. The video established that Trooper Shea did not threaten or coerce appellant in any way. Trooper Shea simply asked appellant whether appellant minded if he took a look in appellant's vehicle to make sure that there was nothing illegal in it. Although the video did not establish that appellant affirmatively responded to Trooper Shea's request for consent to search, appellant's conduct showed that he voluntarily consented to the search. Appellant accompanied Trooper Shea to appellant's vehicle, and appellant guided and conducted the initial search of the vehicle. Appellant gave no indication of any objection to the search. Looking to the totality of the circumstances, we hold that the record supports a finding by clear and convincing evidence that appellant's consent to search was freely and voluntarily given.

■ Even assuming that Trooper Shea requested appellant's consent after the reason for the stop had been completed, the trial court did not err in denying appellant's motion to suppress. After the purpose of a traffic stop has been accomplished, a police officer may ask for consent to search a vehicle; however, if consent is refused, the officer may not detain the occupants or vehicle further unless reasonable suspicion of some criminal activity exists. *Magana v. State*, 177 S.W.3d 670, 673 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *Spight*, 76 S.W.3d at 767–68; *Leach v. State*, 35 S.W.3d 232, 235–36 (Tex.App.-Austin 2000, no pet.); *Simpson v. State*, 29 S.W.3d 324, 328 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd); *see Robinette*, 519 U.S. at 39–40, 117 S.Ct. 417. Thus, an officer may ask for consent to search a vehicle even though the officer does not have reasonable suspicion that

some criminal activity exists. *Leach,* 35 S.W.3d at 236. An officer requesting consent to search may not convey, by words or deed, that compliance is required. *Saldivar v. State,* 209 S.W.3d 275, 282–83 (Tex.App.-Fort Worth 2006, no pet.); *Leach,* 35 S.W.3d at 235–36.

Trooper Shea did nothing to convey that compliance with his request for consent to search was required. Although Trooper Shea testified that appellant was not free to leave and that he would have called a canine unit if appellant had refused consent, Trooper Shea did not convey these facts to appellant. Trooper Shea merely asked appellant whether appellant minded if he took a look in the vehicle. Therefore, even if the reason for the traffic stop had been completed, the trial court would not have erred in concluding that appellant freely and voluntarily consented to the search.

 Appellant asserts that, even if he consented to the search, "the scope of the search was restricted to the areas and articles that were searched by [a]ppellant during the first search, as these were the only areas of the vehicle that [a]ppellant impliedly wished for [Trooper] Shea to see." The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness—what the typical reasonable person would have understood by the exchange between the officer and the suspect. *Simpson,* 29 S.W.3d at 330; *see Florida v. Jimeno,* 500 U.S. 248, 250–51, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). Trooper Shea asked appellant whether he could look in the vehicle for anything illegal. Trooper Shea found the cocaine in what he called the back trunk area of appellant's vehicle. The video established that appellant had shown Trooper Shea articles in that area when appellant conducted the first search of the vehicle. A reasonable person would have understood appellant's consent to search to include that area of the vehicle. Trooper Shea's search of the vehicle did not exceed the scope of appellant's consent. We overrule appellant's second issue.

### This Court's Ruling

We affirm the judgment of the trial court.