**Opinion filed August 28, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00126-CR

_____

## STATE OF TEXAS, Appellant

## V.

## CHRIS FLETCHER WILSON, Appellee

**On Appeal from the 91st District Court**

**Eastland County, Texas**

**Trial Court Cause No. 21503**

**O P I N I O N**

A grand jury indicted Chris Fletcher Wilson for the offense of possession of methamphetamine. Wilson filed a motion to suppress evidence obtained by a search of his vehicle. After a hearing, the trial court granted Wilson's motion to suppress evidence. The State appeals from that order. We affirm.

In its sole issue on appeal, the State argues that the trial court erred when it granted the motion to suppress. We disagree.

In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005); *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Because the trial court is the exclusive factfinder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 87. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Id.*

At the hearing on Wilson's motion to suppress, Officer Matthew Scurry with the Cisco Police Department testified that on April 29, 2007, he stopped appellant for speeding on Interstate 20. Officer Scurry said that his radar indicated Wilson was driving his vehicle at 81 miles per hour in a 65 mile-per-hour zone; however, Wilson accelerated to 90 miles per hour as Officer Scurry followed him. Officer Scurry followed Wilson for five miles before making the stop. Officer Scurry acknowledged that he did not activate the light bar on his police car when he began following Wilson and that Wilson stopped immediately after Officer Scurry activated the light bar.

Officer Scurry testified that he approached Wilson and asked for his driver's license and proof of insurance. Wilson told Officer Scurry that he was on parole for a drug violation. Wilson gave Officer Scurry his driver's license but was unable to locate his proof of insurance. Officer Scurry went to his car to run a driver's license check on Wilson. When he did not get a response to his request for a driver's license check, Officer Scurry made a second request to dispatch for a return on Wilson's driver's license. Sometime during the stop, Wilson located his proof-of-insurance card and voluntarily left his vehicle to give the card to Officer Scurry. Officer Scurry instructed Wilson to remain in a certain spot on the side of the road. However, Wilson would not stay in that spot. Instead, he moved around and was "fidgeting."

While waiting for a return on the driver's license check, Officer Scurry approached Wilson again and asked for consent to search Wilson's vehicle. Officer Scurry testified that Wilson became "tongue-tied" and started stuttering. Wilson gave reasons for not wanting Officer Scurry to search the vehicle and denied consent to search. Officer Scurry had still not received a criminal history for

Wilson at the time he requested consent to search Wilson's vehicle. Officer Scurry conducted a pat-down search of Wilson and had him stand in the borrow ditch. Officer Scurry then conducted a canine search on Wilson's vehicle. On the second time around Wilson's vehicle, the canine alerted on the front door of the vehicle, and illegal drugs were found in the vehicle. Thirteen minutes elapsed from the time of the initial stop until the canine search began.

A traffic stop is a detention and must be reasonable under the United States and Texas Constitutions. *See Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997); *Caraway v. State*, 255 S.W.3d 302, 307 (Tex. App.—Eastland 2008, no pet.). To be reasonable, a traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Davis*, 947 S.W.2d at 245. Reasonableness is measured in objective terms by examining the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *Spight v. State*, 76 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

An officer may check for outstanding warrants and demand identification, a valid driver's license, and proof of insurance from the driver. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004); *Davis*, 947 S.W.2d at 245 n.6; *Caraway*, 255 S.W.3d at 308. While an officer is awaiting a computer warrant check, questioning about matters unrelated to the initial traffic stop does not violate the Fourth Amendment because such questioning does not extend the duration of an initial valid stop. *Caraway*, 255 S.W.3d at 308. In some circumstances, however, extensive questioning about unrelated matters may exceed the scope of the initial stop. *Id*.

When the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 243 (quoting *Robinette*, 519 U.S. at 41 (Ginsburg, J., concurring)); *Caraway*, 255 S.W.3d at 308. Once an officer concludes the investigation of the conduct that initiated the stop, continued detention of a person is permitted only if there is reasonable suspicion to believe another offense has been or is being committed. *Davis*, 947 S.W.2d at 245; *Caraway*, 255 S.W.3d at 308. After the purpose of a traffic stop has been accomplished, a police officer may ask for consent to search a vehicle; however, if consent is refused, the officer may not detain the occupants or vehicle further unless reasonable suspicion of some criminal activity exists. *Caraway*, 255 S.W.3d at 310-11; *Magana v. State*, 177 S.W.3d 670, 673 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Spight*, 76 S.W.3d at 767-68.

3

The record shows that, after the purpose of the traffic stop was accomplished, Officer Scurry "patted" down Wilson and conducted a canine search of Wilson's vehicle. Wilson did not consent to the search; therefore, reasonable suspicion of criminal activity was required to conduct the search.

In addition to the officer's testimony, the trial court also reviewed the recording made on the dash-cam recorder in the officer's vehicle. The trial court found that "the Officer testified that the only reasons he had to prolong the initial detention was that he felt that [Wilson] exhibited nervousness and that [Wilson] refused to give the Officer consent to search his vehicle." Nervous behavior is a pertinent factor in determining reasonable suspicion, but nervousness alone is not sufficient to provide reasonable suspicion. *Green v. State*, 256 S.W.3d 456, 462 (Tex. App.—Waco 2008, no pet.); *LeBlanc v. State*, 138 S.W.3d 603, 608 n.6 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The trial court further found that Officer Scurry did not testify to any specific articulable facts providing reasonable suspicion to prolong the initial detention of Wilson. Giving due deference to the trial court's findings and applying the law to those findings and after reviewing the record including our own review of the dash-cam recording, we find that it has not been shown that the trial court abused its discretion when it granted Wilson's motion to suppress. The State's sole issue on appeal is overruled.

The judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


August 28, 2009

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

4