

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-09-141-CR

HAROLD DEWAYNE FERGUSON                                                    APPELLANT

V.

THE STATE OF TEXAS                                                                    STATE

------------

### FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

After reserving his right to appeal the trial court's denial of his pretrial motion to suppress, Appellant Harold Dewayne Ferguson pleaded guilty to a felony drug offense. He now appeals the denial of his motion to suppress. We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

A deputy sheriff found methamphetamine hidden in Ferguson's boot during a pat-down search after a stop for a traffic violation. The grand jury indicted Ferguson for possessing at least four grams but less than two hundred grams of methamphetamine with intent to deliver, enhanced with prior felony convictions. Ferguson filed a motion to suppress, asserting that his detention, arrest, search, and seizure violated the state and federal constitutions.

At the pretrial hearing, Ferguson limited the scope of his motion to suppress:

> Basically, my motion's going to be around the initial stop. And we're not necessarily contesting the reason for the stop, but for the – – I guess the intrusion that was made during the stop.
>
> The officer had Mr. Ferguson get out of the car. I think that's the issue that we're going to be dealing with today, was whether or not he – – that part of the seizure was going to be valid as per case law.

Deputy Sheriff Luis Montanez, was the only witness at the hearing. He testified that around 9:00 p.m. on July 26, 2008, while patrolling a rural part of the county, he saw a red Chevrolet pickup truck approach an intersection and turn left without signaling. He pulled in behind the truck and activated his emergency lights. Through the back window of the pickup, Deputy Montanez saw the driver dip his right shoulder down toward his leg area and thought he was going for a weapon.

The driver, Ferguson, was the only person in the truck. When he brought it to a stop, the deputy approached and identified him by license and proof of insurance. Deputy Montanez testified that Ferguson seemed "very nervous" and that

his responses to questions were unusual. For instance, when asked where he was going, Ferguson replied that he was going to a friend's house, although he could not give an address despite claiming that he had known the friend for about eight years.

Deputy Montanez asked Ferguson to step out of the truck and stand between their two vehicles while he ran his license for outstanding warrants. The process took approximately four minutes. During that time, the deputy asked Ferguson if he had any weapons on him. Ferguson replied that he had a pocket knife and began to reach inside his pants pocket. Montanez asked him to keep his hands out of his pockets and to turn around and put his hands behind his head so that he could pat him down for officer safety. In so doing, the deputy retrieved the knife from Ferguson's pocket and continued to pat down the rest of his leg. When he got to Ferguson's boot, he felt a "rather large" bulge, which he thought might be a weapon. He pulled the pant leg up, revealing a partially unzipped black leather case with a plastic bag hanging out. He inquired of the bag's contents, to which Ferguson replied that he did not know.

Deputy Montanez asked if he could retrieve the bag and look inside. Ferguson said yes. Inside, the deputy found a glass pipe and a crystal-like substance that looked like methamphetamine. Ferguson was placed under arrest and into the back of the patrol car. Then, as required by sheriff's department policy, the deputy conducted an inventory search of Ferguson's truck, whereupon he discovered

another black case, another glass pipe, cash, plastic bags, cell phones, and information the deputy referred to as "dope notes."

At the end of the hearing, the trial court denied Ferguson's motion to suppress. Ferguson subsequently entered into a plea bargain agreement, and reserving his right to appeal the denial of his motion to suppress, he pleaded guilty to possessing less than a gram of methamphetamine with intent to deliver. He also pleaded true to two of the indictment's enhancement paragraphs. The trial court accepted the terms of the plea bargain and sentenced Ferguson to thirty-eight years' confinement. This appeal followed.

### III. Discussion

Ferguson concedes the validity of the initial traffic stop for failing to signal a left turn. In a single point, he complains of the subsequent detention and searches, contending that the trial court erred by denying his motion to suppress because Deputy Montanez had neither probable cause nor reasonable suspicion to detain him or to search his person or his truck.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and

4

demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). The issue of whether a search is reasonable under our state and federal constitutions is a question of law that we review de novo. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).

## B. Analysis

Although Ferguson concedes that the officer had the right to issue a citation for a traffic violation, he argues that there was no basis for the detention after the stop, the pat-down search of his person, the search of the black case found inside his boot, or the search of his vehicle.

### 1. Detention Between the Stop and the Discovery of Contraband

During a traffic stop, an officer is authorized to ask the driver for identification, a valid driver's license, information concerning ownership of the vehicle, proof of insurance, and information concerning the destination and purpose of the trip. *Kothe*, 152 S.W.3d at 63; *Davis v. State*, 947 S.W.2d 240, 245 n.6 (Tex. Crim. App. 1997); *Caraway v. State*, 255 S.W.3d 302, 307 (Tex. App.— Eastland 2008, no pet.); *Lambeth v. State*, 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref'd). The officer may also check for outstanding warrants. *Kothe*, 152 S.W.3d at 63; *Caraway*, 255 S.W.3d at 308. The process in this case lasted approximately four

5

minutes. We hold that this was reasonable and overrule this part of Ferguson's sole point.

### 2. Pat-down Search for Weapons

It is undisputed that Deputy Montanez performed a pat-down search on Ferguson. A pat-down search is substantially less intrusive than a standard search requiring probable cause. *O'Hara v. State,* 27 S.W.3d 548, 550–51 (Tex. Crim. App. 2000). Its purpose is officer safety. *Id.* at 555. A pat-down search for officer safety will be justified only when the officer can point to specific and articulable facts that reasonably lead him to conclude that the suspect might possess a weapon. *See Carmouche v. State,* 10 S.W.3d 323, 329 (Tex. Crim. App. 2000).

Once an officer has stopped a person, he may conduct a pat-down search for weapons to maintain officer safety if he is justified in believing the person might be armed. *Terry v. Ohio*, 392 U.S. 1, 21, 27, 88 S. Ct. 1868, 1883 (1968); *O'Hara,* 27 S.W.3d at 550.

Here, there is no question that Ferguson was armed. As the officer was waiting for dispatch to return a warrant check on Ferguson's license, he asked Ferguson if he had any weapons. Ferguson admitted that he had a pocket knife. At that point, the only question was to what degree was Ferguson armed. Deputy Montanez testified that he thought Ferguson had been retrieving a weapon before he pulled him over because as he followed behind his truck in the patrol car, he saw Ferguson's shoulder dip down toward his leg area. Moreover, once Ferguson

6

admitted that he had a knife, Deputy Montanez was justified in conducting a pat-down search for officer safety. *See O'Hara*, 27 S.W.3d at 553. Furthermore, he was justified in conducting a thorough pat-down. *See id.* at 554. Once an officer conducting a pat-down search satisfies himself that a suspect has no weapons, and the officer has no valid reason to further invade the suspect's personal security, then the corollary must be true also that until the officer is satisfied that the suspect has no weapons—or in this case, no more weapons—he may continue the search. *See Stoker v. State*, 170 S.W.3d 807, 813 (Tex. App.—Tyler 2005, no pet.); *see also Worthey v. State*, 805 S.W.2d 435, 438–39 (Tex. Crim. App. 1991).

Accordingly, we hold that Deputy Montanez's pat-down of Ferguson for officer safety was reasonable and that it therefore comported with constitutional safeguards. *See Terry*, 392 U.S. at 27, 88 S. Ct. at 1883; *O'Hara,* 27 S.W.3d at 550. We overrule this part of Ferguson's sole point.

### 3. Search of the Black Case in Ferguson's Boot

Deputy Montanez retrieved the knife from Ferguson's pocket and continued patting down the rest of his leg. When he felt the "rather large" bulge in Ferguson's boot, he thought it contained a weapon. He pulled the pant leg up and observed a partially unzipped black leather case with a plastic bag hanging out. He asked Ferguson what was inside the bag, and Ferguson replied he did not know. Montanez asked if he could retrieve the bag and look inside. Ferguson said yes.

Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *See State v. Ibarra,* 953 S.W.2d 242, 243 (Tex. Crim. App. 1997). The consent must be voluntary, and voluntariness is a question of fact to be determined from all the circumstances. *Carmouche,* 10 S.W.3d at 331. To be voluntary, the consent must not be coerced, by explicit or implicit means, by implied threat or covert force. *Id.* The federal constitution requires the State to prove the voluntariness of consent only by a preponderance of the evidence; the Texas constitution requires the State to show by clear and convincing evidence that consent was freely given. *See Ibarra,* 953 S.W.2d at 243–45. Because voluntariness of consent is an issue of fact, we defer to the trial court's ruling if it is supported by the record. *See Amador,* 221 S.W.3d at 673; *Estrada,* 154 S.W.3d at 607.

The only evidence in the record on the issue of Ferguson's consent for the deputy to search inside the bag found in his boot supports the trial court's ruling. Deputy Montanez testified that Ferguson told him he did not know what was inside the bag in his boot and that he answered yes when the deputy asked if he could look inside it. There is no evidence to the contrary. We hold, therefore, that the record is sufficient to support the trial court's implied factual finding that Ferguson voluntarily consented to the search of the bag. *See Chavarria v. State,* 876 S.W.2d 388, 392 (Tex. App.—El Paso 1994, no pet.). Because Ferguson voluntarily consented to the search, we hold as a matter of law that the search of the black bag

8

was reasonable and therefore satisfied constitutional standards. Accordingly, we overrule this part of Ferguson's sole point.

### 4. Vehicle Search after Ferguson's Arrest

Police may search a vehicle incident to a recent occupant's arrest if it is reasonable to believe that the vehicle contains evidence of the offense of arrest. *See Arizona v. Gant*, 129 S. Ct. 1710, 1723 (2009); *see also Hill v. State*, 303 S.W.3d 863, 874–76 (Tex. App.—Fort Worth 2009, pet. ref'd). Once the deputy arrested Ferguson for possessing contraband found on his person, it was reasonable for the deputy to search for more contraband in the vehicle Ferguson was driving. We overrule this part of Ferguson's sole point.

### IV. Conclusion

Having overruled each part of Ferguson's sole point, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 20, 2010