**Opinion filed July 29, 2010**



# In The

# Eleventh Court of Appeals

_____

## No. 11-09-00331-CR

_____

## BRENDA LEE DANIEL HARRISON, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 91st District Court**

**Eastland County, Texas**

**Trial Court Cause No. 21882**

## M E M O R A N D U M   O P I N I O N

The trial court convicted Brenda Lee Daniel Harrison, upon her plea of guilty, of possession of less than one gram of methamphetamine. The trial court found both enhancement allegations to be true and assessed her punishment at confinement for five years. We affirm.

*Sole Point of Error*

In her sole point of error, appellant argues that the trial court abused its discretion when it denied her motion to suppress. Appellant contends that she had not committed a traffic offense and, therefore, that Texas Department of Public Safety Trooper Buddy Wise lacked reasonable suspicion

to stop her. Appellant further argues that Trooper Wise illegally detained her until a drug dog could arrive.

*Applicable Law*

In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). Because the trial court is the exclusive factfinder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We also give deference to the trial court's rulings on mixed questions of law and of fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 87. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Guzman*, 955 S.W.2d at 87. An appellate court must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any applicable theory of law. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002); *Romero v. State*, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990).

A traffic stop is a detention and must be reasonable under the United States and Texas Constitutions. *Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997). To be reasonable, a traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Davis*, 947 S.W.2d at 245. Reasonableness is measured in objective terms by examining the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *Caraway v. State*, 255 S.W.3d 302, 307 (Tex. App.—Eastland 2008, no pet.).

An officer may check for outstanding warrants and demand identification, a valid driver's license, and proof of insurance from the driver. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004); *Davis*, 947 S.W.2d at 245 n.6; *Caraway*, 255 S.W.3d at 308. While an officer is awaiting a computer warrant check, questioning about matters unrelated to the initial traffic stop does not violate the Fourth Amendment because such questioning does not extend the duration of an initial valid stop. *Caraway*, 255 S.W.3d at 308. In some circumstances, however, extensive questioning about unrelated matters may exceed the scope of the initial stop. *Id*.

2

When the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 243 (quoting *Robinette*, 519 U.S. at 41 (Ginsburg, J., concurring)); *State v. Wilson*, 295 S.W.3d 759, 762 (Tex. App.—Eastland 2009, no pet.); *Caraway*, 255 S.W.3d at 308. Once an officer concludes the investigation of the conduct that initiated the stop, continued detention of a person is permitted only if there is reasonable suspicion to believe another offense has been or is being committed. *Davis*, 947 S.W.2d at 245; *Wilson*, 295 S.W.3d at 762; *Caraway*, 255 S.W.3d at 308. After the purpose of a traffic stop has been accomplished, a police officer may ask for consent to search a vehicle; however, if consent is refused, the officer may not detain the occupants or vehicle further unless reasonable suspicion of some criminal activity exists. *Wilson*, 295 S.W.3d at 762; *Caraway*, 255 S.W.3d at 310-11; *Magana v. State*, 177 S.W.3d 670, 673 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Spight v. State*, 76 S.W.3d 761, 767-68 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

*Evidence at Suppression Hearing*

Trooper Wise testified that he saw appellant driving down a residential street on September 6, 2008, at 11:25 a.m. Appellant stopped her vehicle in the middle of the road and then proceeded down the street. She did this numerous times. She finally stopped about fifteen feet from the stop sign at a busy intersection that crossed a state highway. She then sped through the intersection without stopping at the stop sign. Trooper Wise testified that he did not want to be hit by the oncoming traffic so he waited to cross the intersection before stopping appellant for disregarding the stop sign. When appellant pulled over, she stopped in an intersection.

Appellant had trouble finding her driver's license. She was "fidgety" and "kind of fumbling around." She was more nervous than normal. She told him that she was on her way to a shower. Her speech was not clear, and she mumbled and rambled. Trooper Wise stated that he had to "really, really try to pay attention to her in order to understand her." Appellant did not make eye contact and kept her sunshades on. The inside of her vehicle "was just trashy" like she had "been in it for awhile," and she appeared to be trying to hide something. Trooper Wise suspected that she might be impaired. Trooper Wise further testified that, based on his training and experience, the trash and clutter in appellant's car was consistent with "somebody that has a chemical dependency" and that it appeared appellant was trying to hide something.

3

While Trooper Wise ran her information through the computer in his patrol vehicle, he noticed appellant moving back and forth inside the vehicle. Trooper Wise testified that her nervousness was escalating. Trooper Wise was informed that appellant had a history of arrests concerning methamphetamine.

Based on his training, experience, and appellant's behavior, Trooper Wise asked appellant to step out of her vehicle. Appellant told Trooper Wise that she had been arrested numerous times for methamphetamine, and she made a point to tell Trooper Wise that she was clean and did not do "that anymore." As her nervousness "seemed to grow," Trooper Wise had concerns that she might have a controlled substance on her or in her car. When Trooper Wise asked for consent to search, appellant stated that she wanted to get to the party and asked if Trooper Wise could search her vehicle at a later time. Trooper Wise told her that he did not make appointments for searches. Appellant then explained that there was a lot of "stuff" in her vehicle, that it would take too long, and that she wanted to get to where she was going. After she denied consent, Trooper Wise called for the canine unit to come.

The canine unit arrived in approximately fifteen minutes, and the dog alerted on appellant's vehicle. A couple of small baggies and several syringes were recovered. One of the syringes was used. The baggies and the used syringe field-tested positive for controlled substances. The substance was later identified as methamphetamine. A small plastic bag containing four or five little cotton pieces was found inside her bra. The cotton also tested positive for methamphetamine. Trooper Wise stated that about twenty minutes passed from the time he initially stopped appellant until the dog alerted on her car.

Trooper Wise's patrol vehicle was equipped with a video recording system. The recording was introduced into evidence and supported Trooper Wise's testimony.

*Analysis*

Appellant argues that the initial traffic stop was not justified because there was no painted line or crosswalk at the intersection with the stop sign. In addition, appellant contends the detention was longer than necessary. Therefore, appellant concludes that the trial court erred by denying her motion to suppress. We disagree.

Both Trooper Wise's testimony and the digital recording of the stop reflect that appellant did not stop at the highway intersection stop sign pursuant to TEX. TRANSP. CODE ANN. §§ 544.003, 544.010 (Vernon 1999), § 545.151 (Vernon Supp. 2009). A stop sign is valid regardless of whether lines for a crosswalk have been painted. Section 544.003(c)(2). In addition, Trooper Wise had observed appellant driving erratically down a residential street, coming to a complete stop in the middle of the street, and then driving forward several times. The record supports the validity of the initial traffic stop.

We disagree with appellant's contention that the facts of her case mirror the facts in *Davis*, 947 S.W.2d 240. *Davis* involved a stop on suspicion of driving while intoxicated, and the officer detained the defendant on the conclusion that he did not appear to be someone who was on a business trip. Here, Trooper Wise expressed factors that gave rise to a reasonable suspicion that justified further investigation. Trooper Wise's experience and training indicated that appellant's demeanor and the appearance of her vehicle were consistent with someone hiding a controlled substance. Appellant volunteered that she had had multiple arrests for possession of methamphetamine, and Trooper Wise received information that confirmed her statements.

The record reflects that only twenty minutes passed from Trooper Wise's initial stop until the time that the dog alerted on appellant's car. The record does not support appellant's contention that she was detained for an unreasonable amount of time.

The trial court did not err in denying appellant's motion to suppress. The sole point is overruled.

*Holding*

The judgment of the trial court is affirmed.

July 29, 2010 TERRY McCALL

Do not publish. *See* TEX. R. APP. P. 47.2(b). JUSTICE

Panel consists of: McCall, J.,
Strange, J., and Boyd, S.J.[1]

---

[1]John T. Boyd, Retired Chief Justice, Court of Appeals, 7th District of Texas at Amarillo, sitting by assignment.