In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00001-CR

                                                ______________________________

 

 

                                     LAVERN A.
PFEIFFER, Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 102nd
Judicial District Court

                                                          Red
River County, Texas

                                                          Trial Court
No. CR01133

 

                                                    
                                              

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            On
March 22, 2007, on Highway 37 North, about a mile north of Clarksville, Red
River County, Texas, State Trooper Matthew Kuhelengel stopped Lavern A.
Pfeiffer’s truck because the truck did not have mud flaps.  Kuhelengel questioned Pfeiffer about his
identity, place of residence, and travel destination.  The officer twice told Pfeiffer that he was
going to give him a warning about the mud flaps, and after checking Pfeiffer’s
license through dispatch, determined that he had no outstanding warrants.  Upon further questioning by Kuhelengel,
Pfeiffer admitted that he “got a DWI” thirty years prior.  Pfeiffer then denied Kuhelengel’s subsequent
requests for permission to search the vehicle. 
Noting that Pfeiffer was “talking a lot,” “very nervous,” and that he
had been “arrested a bunch of times,” Kuhelengel requested a canine unit and
continued to detain Pfeiffer until it arrived. 
After the dog showed a positive response on the rear passenger door, a
crude pipe was found in the rear floorboard and a bottle of methamphetamine was
found in the front console.  Pfeiffer was
arrested and charged with possession of a controlled substance.   

            In
a pretrial motion to suppress the drugs and paraphernalia, Pfeiffer argued that
the warrantless search violated his Fourth Amendment rights because it lacked
requisite cause and because he was illegally detained after the traffic stop
was completed.  The trial court denied
Pfeiffer’s motion.  Pfeiffer pled guilty
and received a ten-year probated sentence.  On appeal, Pfeiffer argues that “his continued
detention by the police was without sufficient cause, rendering the later
search of his vehicle invalid.”  

            We
reverse the trial court’s judgment because Kuhelengel lacked reasonable
suspicion to continue detaining Pfeiffer while waiting for a canine unit. 

Standard of Review

            We
review the trial court’s decision to deny Pfeiffer’s motion to suppress
evidence by applying a bifurcated standard of review.  Graves
v. State, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref’d); Rogers v. State, 291 S.W.3d 148, 151
(Tex. App.—Texarkana 2009, pet. ref’d).

            Because
the trial court is the exclusive trier of fact and judge of witness credibility
at a suppression hearing, we afford almost total deference to its determination
of facts supported by the record.  State v. Ross, 32 S.W.3d 853, 856–57
(Tex. Crim. App. 2000); Carmouche v.
State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We also afford such deference to a trial
court’s ruling on application of law to fact questions, also known as mixed
questions of law and fact, if the resolution of those questions turns on an
evaluation of credibility and demeanor.  Villarreal v. State, 935 S.W.2d 134, 138
(Tex. Crim. App. 1996).

            While
we defer to the trial court on its determination of historical facts and
credibility, we review de novo its application of the law and determination on
questions not turning on credibility.  Carmouche, 10 S.W.3d at 332; Guzman, 955 S.W.2d at 89; Graves, 307 S.W.3d at 489.  Since all evidence is viewed in the light
most favorable to the trial court’s ruling, we are obligated to uphold the
denial of Pfeiffer’s motion to suppress if it was supported by the record and
was correct under any theory of law applicable to the case.  Carmouche,
10 S.W.3d at 328; State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
In determining whether a trial court’s decision is supported by the
record, we generally consider only evidence adduced at the suppression hearing,
because the ruling was based on that evidence, rather than evidence introduced
later at trial.  Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

Analysis

Officer Kuhelengel lacked reasonable suspicion to continue to detain
Pfeiffer 

            In
his sole point of error, Pfeiffer contends that the trial court should have
suppressed the drugs because “his continued detention by the police was without
sufficient cause, rendering the later search of his vehicle invalid.” 

            Police
officers may stop and detain a person if they have a reasonable suspicion that
a traffic violation is in progress or has been committed.  Garcia
v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992).  A traffic stop is a detention and must be
reasonable under the United States and Texas Constitutions.  See
Davis v. State, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997); Caraway v. State, 255 S.W.3d 302, 307
(Tex. App.—Eastland 2008, no pet.).  To
be reasonable, a traffic stop must be temporary and last no longer than
necessary to effectuate the purpose of the stop.  Florida
v. Royer, 460 U.S. 491, 500 (1983); Davis,
947 S.W.2d at 245.  Reasonableness is
measured in objective terms by examining the totality of the circumstances.  Ohio v.
Robinette, 519 U.S. 33, 39 (1996); Spight
v. State, 76 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2002, no
pet.).  An investigative stop that is
reasonable at its inception may violate the Fourth Amendment because of
excessive intensity or scope.  Davis, 947 S.W.2d at 243 (citing Terry v. Ohio, 392 U.S. 1, 18 (1968)).

            During
a routine traffic stop, an officer may check for outstanding warrants and
demand identification, a valid driver’s license, and proof of insurance from
the driver.  Kothe v. State, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004); Caraway, 255 S.W.3d at 307.  If, during that investigation, an officer
develops reasonable suspicion that another violation has occurred, the scope of
the initial investigation expands to include the new offense.  Goudeau
v. State, 209 S.W.3d 713, 719 (Tex. App.—Houston [14th Dist.] 2006, no
pet.).  When the reason for the stop has
been satisfied, the stop may not be used as a “fishing expedition for unrelated
criminal activity.”  Davis, 947 S.W.2d at 243 (quoting Robinette, 519 U.S. at 41 (Ginsburg, J., concurring)).  Once the officer concludes the investigation
of the conduct that initiated the stop, continued detention of a person is
permitted only if there is reasonable suspicion to believe that another offense
has been or is being committed.  Id. at 245.

            Reasonable
suspicion must be founded on specific, articulable facts which, when combined
with rational inferences from those facts, would lead the officer to conclude
that a particular person actually is, has been, or soon will be engaged in
criminal activity.  Crain v. State, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010).  While nervousness alone is not sufficient to
establish reasonable suspicion, it is a factor that may be considered.  State
v. Wilson, 295 S.W.3d 759, 762 (Tex. App.—Eastland 2009, no pet.).  Whether the totality of the circumstances is
sufficient to support an officer’s reasonable suspicion is a legal question
that we review de novo. Madden v. State,
242 S.W.3d 504, 511 (Tex. Crim. App. 2007). 

            In
Davis, the police validly stopped
Davis on suspicion of drunk driving, but having determined Davis was not drunk
and did not have any outstanding warrants, the police detained him, without
reasonable suspicion or probable cause, until the canine unit arrived.  Davis,
947 S.W.2d at 241, 246.  “[T]he validity
of an arrest or stop should be determined solely by analyzing objectively the
facts surrounding the event.”  Garcia, 827 S.W.2d at 943.  In State
v. Daly, the court held Daly’s
due process rights were violated when he was detained unlawfully after being
issued a warning on his traffic stop, because no suspicious behavior or
incriminating circumstances arose during the stop to justify the continued
detention.  State v. Daly, 35 S.W.3d 237, 241–43 (Tex. App.—Austin 2000, no
pet.).  In McQuarters v. State, the court held detaining McQuarters after the
issuance of a warning in order to wait for the canine unit, without evidence
showing reasonable suspicion, made the continued detention unreasonable and
required the suppression of the evidence. 
McQuarters v. State, 58 S.W.3d
250, 256–57 (Tex. App.—Fort Worth 2001, pet. ref’d).

            Here,
Kuhelengel initiated the stop because Pfeiffer’s truck did not have mud
flaps.  During the stop, Kuhelengel twice
told Pfeiffer that he would issue him a warning regarding the mud flaps.  After Kuhelengel received confirmation from
his dispatcher that Pfeiffer had no outstanding warrants, Kuhelengel asked
Pfeiffer to “come on back here for me” so he could explain the warning form,
and Kuhelengel continued to question him. 
Answering further questions, Pfeiffer denied having any alcohol,
weapons, or drugs in his truck. 
Kuhelengel twice asked for permission to search the truck, and Pfeiffer
denied both requests.  After Pfeiffer
rebuffed his requests for permission to search the truck, Kuhelengel requested
a canine unit and detained Pfeiffer until it arrived. 

            Kuhelengel’s
request for a canine unit was clearly unrelated to the reason for the stop and
exceeded the scope of the initial traffic investigation, and therefore,
Kuhelengel was required to have reasonable suspicion that another violation had
occurred or would soon occur.  See Davis, 947 S.W.2d at 243; Goudeau, 209 S.W.3d at 719.  Kuhelengel said Pfeiffer was “real nervous,
real hesitant,” and when Kuhelengel was requesting the canine unit, he
explained to the dispatcher that Pfeiffer was “talking a lot,” and was
“[v]ery[,] very nervous.”  While
nervousness is a pertinent factor, nervousness alone is not sufficient to
establish reasonable suspicion.  Wilson, 295 S.W.3d at 762.  

            Kuhelengel
also told the dispatcher that Pfeiffer admitted that he had “[b]een arrested a
bunch of times.”  The transcription of
the video recording of the incident does not support that assertion.  Rather, when Kuhelengel asked Pfeiffer if he
had ever been arrested before, Pfeiffer said, “Oh, hell, yeah,” and when asked
what he had been arrested for, Pfeiffer said, “[W]ell--well, what--what sounds
good? . . . . Tomorrow’s my birthday.  I--I
at one time thirty years ago, I got a DWI.” 
The State argues that these statements tended to minimize Pfeiffer’s
criminal history and suggested that he was lying about his prior arrests.  While Pfeiffer’s answer sounds a little
confusing, it is not deceptive, and the phrase “hell, yeah” is a commonly used
southern expression.  We find this factor
to be a weak indicator of criminal conduct. 

            The
State argues that Pfeiffer gave contradictory answers about where he was
going.  Kuhelengel also testified that
Pfeiffer “couldn’t ever give me a definite answer of where he was driving
to.”  At various points during the stop,
the following exchanges took place:

            TROOPER
KUHELENGEL:  You just coming in from
Nebraska now? 

 

                        [Pfeiffer’s vehicle had a Nebraska
license plate.]

 

            [PFEIFFER]:
 No, I (inaudible) in Idabel.

 

            [PFEIFFER]:
 I got a late start.  I’ll tell you what happened.  Here about four or five days ago, well, I’ve
been pick [sic] up tin and hauling it in to a salvage yard off here.

 

            TROOPER
KUHELENGEL:  Oh, okay.

 

            .
. . .

 

            TROOPER
KUHELENGEL:  Are you going to move a
little tin today?

 

            [PFEIFFER]:
 You know, another guy I met, his name is
Carl.  Uh, anyway, he’s got 80 acres
right across.  I’ve been burning--I’ve
been burning, uh, timber there for the last week and I volunteered to clean up
some of his timber for him.  He wanted it
cleaned up.  Anything to help, you know.

 

            TROOPER
KUHELENGEL:  Right. Right.

 

            [PFEIFFER]:
 And I got way, way over my head.  I’ll--I’ll--I’ll spend an hour or two picking
up tin and putting on the pickup because that’s all the tin I want to haul in
one whack.  For thirteen dollars, sixteen
dollars.

 

            .
. . .

 

            TROOPER
KUHELENGEL:  Whereabouts is your place
at?

 

            [PFEIFFER]:
 In Nebraska? 

 

            TROOPER
KUHELENGEL:  No, this place here you’re
going to.

 

            [PFEIFFER]:
 Well, I’m going to Carl’s right
now.  But, uh--uh--Carl.  I can’t think of his name now.  You got me all shook up.  He’s--he’s a tough guy.  He’s the guy that…

 

            TROOPER
KUHELENGEL:  Carl Kisler? 

 

            [PFEIFFER]:
 That’s it.  That’s it.  And--and he’s--we’re (inaudible) I’ve been
burning hedge back there like you can’t believe, and there’s--there’s . .
. .

 

While Pfeiffer’s statements are
somewhat rambling, they are not contradictory. 
Pfeiffer initially explains that he was picking up tin for salvage “four
or five days ago,” and that he was currently doing timber work for and/or with
Kisler as well as “spend[ing] an hour or two picking up tin.”  Therefore, this is a weak indicator of
criminal conduct.

            During
the stop, Pfeiffer was unquestionably very nervous, and he tended to ramble
when questioned.  However, without more,[1]
the facts and circumstances present here do not give rise to reasonable
suspicion.  

            Accordingly,
we reverse the trial court’s order denying the motion to suppress and remand
the case to the trial court for further proceedings.

 

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          April
27, 2011

Date Decided:             May
4, 2011

 

Do Not Publish 











[1]In
an offer of proof, Kuhelengel testified that during the stop, he received a
call on his cell phone from Investigator Mark Perkins and that he “relayed the
information” that gave him (Kuhelengel) “reasonable suspicion that drugs may be
in [Pfeiffer’s] vehicle.”  Based on Pfeiffer’s
hearsay objection, the trial court excluded this testimony.  In its brief, the State raises a cross-issue
complaining that the trial court erred by excluding Kuhelengel’s testimony
regarding what Perkins told him and that the excluded testimony provided
Kuhelengel with reasonable suspicion. 
However, the State is required to file a notice of appeal in order to
perfect a cross-appeal under Article 44.01 of the Texas Code of Criminal
Procedure.  Baines v. State, No. 06-10-00069-CR, 2010 WL 4321599 (Tex.
App.––Texarkana 2010, pet. ref’d); see, e.g., Davis v. State, 144
S.W.3d 192, 202 (Tex. App.—Fort Worth 2004, pet. ref’d); Strong v. State, 87
S.W.3d 206, 212 (Tex. App.—Dallas 2002, pet. ref’d); Ganesan v. State, 45
S.W.3d 197, 203–04 (Tex. App.—Austin 2001, pet. ref’d); Malley v. State, 9
S.W.3d 925, 927 (Tex. App.––Beaumont 2000, pet. ref’d); see also Rodriguez v. State, 939 S.W.2d 211, 219 (Tex. App.––Austin
1997, no pet.); see generally United
States v. Sanges, 144 U.S. 310, 313–18 (1892) ( government may not bring
appeal without express statutory authority). 
Here, the State failed to file a notice of appeal; therefore, we lack
jurisdiction to consider any cross-appeal raised by the State.