**Opinion filed May 10, 2012**



# In The

# Eleventh Court of Appeals

—————

## No. 11-10-00133-CR

—————

## ROBERT MARTIN HANKS, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 23885A**

## M E M O R A N D U M   O P I N I O N

Robert Martin Hanks appeals his conviction for the first-degree felony offense of possession of four grams or more but less than two hundred grams of methamphetamine with the intent to deliver. Appellant pleaded guilty to the offense after the trial court denied his first amended motion to suppress evidence. Pursuant to a plea bargain agreement, the trial court sentenced appellant to eight years confinement. In this appeal, appellant challenges the trial court's denial of his first amended motion to suppress. We affirm.

### Issues on Appeal

In each of his seven appellate issues, appellant contends that the trial court erred by denying his first amended motion to suppress evidence. Specifically, appellant contends that the trial court erred by denying his motion (1) because the police officer discovered the

methamphetamine as a result of illegally detaining him after a traffic stop (first issue); (2) because the police officer engaged in an illegal warrantless search of the passenger compartment of his vehicle, the trunk of the vehicle, the luggage that was located in the trunk, and an unsealed envelope that was located in that luggage (second through fifth issues); and (3) because the police officer intentionally, knowingly, or in reckless disregard for the truth made materially false statements in the affidavit that was used to obtain a warrant to search a sealed FedEx envelope that was located in the luggage (sixth and seventh issues).

*Evidence at Suppression Hearing*

On April 17, 2009, at about 9:30 a.m., Special Agent Robert David Ramirez of the West Central Texas Interlocal Crime Task Force was working criminal interdiction on Interstate 20 in Taylor County. At that time, Agent Ramirez observed appellant driving a 2009 Hyundai in a westbound lane of the highway. Agent Ramirez's radar indicated that appellant was traveling seventy-eight miles per hour. Therefore, Agent Ramirez stopped appellant for a speeding violation. The stop was videotaped on a camera in Agent Ramirez's car, and the State introduced into evidence a copy of the video (in DVD format). The DVD contained audio and video of the stop. We have reviewed the DVD. Many of appellant's statements on the DVD are inaudible because of the background noise on Interstate 20. The matters depicted in the video and the statements that can be heard on the audio are consistent in material respects with Agent Ramirez's testimony.

Agent Ramirez stopped his car behind appellant's car on the shoulder of the highway. Agent Ramirez got out of his car, approached the passenger's side of appellant's car, and then spoke with appellant through the open passenger's side window. Agent Ramirez testified that he smelled the odor of marihuana emanating from appellant's car. Appellant gave his driver's license and a copy of a rental agreement for the car to Agent Ramirez at his request. Appellant was listed as the primary driver of the car in the rental agreement. Agent Ramirez asked appellant questions about where he was going. Appellant told Agent Ramirez that he was lost, and appellant asked Agent Ramirez how to get to California. Agent Ramirez testified that appellant was quiet and lethargic and looked really tired. Agent Ramirez returned to his car, where he determined that appellant's driver's license status was clear and that appellant had no outstanding warrants.

Agent Ramirez returned to appellant's car and gave appellant's driver's license and the rental agreement back to appellant. Agent Ramirez still detected the smell of marihuana. The

2

DVD shows that Agent Ramirez then said, "[Appellant], let me ask you a question real quick." Agent Ramirez testified that appellant responded, "Okay." The DVD shows that, before asking appellant a question, Agent Ramirez told appellant, "I am done with my traffic stop"; "I am going to give you a break on that and let you make it okay"; and "I understand you have been driving awhile and are probably tired." Agent Ramirez then told appellant that he worked for the drug task force. He asked appellant, "You wouldn't have anything illegal in your vehicle, would you?" Appellant's response, if any, to this question is inaudible on the DVD. Agent Ramirez testified that appellant told him there was a marihuana blunt in the vehicle.

The DVD shows that Agent Ramirez asked appellant if he could see the blunt. Appellant looked for the blunt in the front seat area of the car but could not find it. The DVD shows that Agent Ramirez told appellant not to worry and that Agent Ramirez said that he would find the blunt. Agent Ramirez then asked appellant to step out of the car. Agent Ramirez testified that he asked appellant if that was okay and that appellant responded, "Okay." Appellant exited the car, and Agent Ramirez asked appellant if he could perform a pat-down search. Appellant responded, "Sure," and Agent Ramirez performed the search. During the pat-down search, Agent Ramirez did not find any weapons or drugs. Agent Ramirez and appellant briefly discussed appellant's employment history. Appellant told Agent Ramirez that he was currently unemployed. Following the discussion about appellant's employment history, appellant leaned against the front of Agent Ramirez's car with his back to the camera that was in the car.

Agent Ramirez looked in appellant's car. He testified that he found particles of marihuana on the passenger floorboard and a usable amount of marihuana in the console. The DVD shows that appellant again told Agent Ramirez that the blunt was in the car. The DVD also shows that appellant told Agent Ramirez that he had smoked the blunt the day before. Agent Ramirez did not find the blunt in the car. He opened the trunk to appellant's car. He found suitcases and bags in the trunk. Agent Ramirez said that he also found pieces of marihuana in the trunk.

Another police officer arrived at the scene as backup. Agent Ramirez noticed that one of the suitcases was locked. He asked appellant if he could open it. Agent Ramirez testified that appellant said, "Yes." Agent Ramirez asked appellant if he had the key to the suitcase's lock. Appellant told Agent Ramirez that the key was with the set of keys in the ignition. Agent Ramirez retrieved the keys from the ignition and handed them to appellant. Appellant told Agent Ramirez which key would open the lock and handed the keys back to him. Agent Ramirez said

3

that he asked appellant whether it was okay for him to open the lock and that appellant responded, "Okay." Inside the suitcase, Agent Ramirez found a white bowl that had marihuana residue in it. He also found a sealed FedEx envelope that was addressed to appellant. Appellant said that the envelope belonged to him but that he did not know what was in it. The DVD shows that Agent Ramirez asked appellant if he could open the envelope and that appellant responded to Agent Ramirez by telling him that he could not open it. Appellant also said that he did not want the envelope to be opened. Agent Ramirez set the envelope to the side.

Appellant told Agent Ramirez that he had marihuana in another suitcase. The DVD shows that appellant said, "I have weed in the other bag." This suitcase was also locked. Agent Ramirez asked appellant if he had a key to the lock on this suitcase. Appellant showed Agent Ramirez the key, and Agent Ramirez unlocked the suitcase. Inside the suitcase, Agent Ramirez found an open FedEx envelope that contained marihuana. This envelope was also addressed to appellant. Agent Ramirez placed appellant under arrest for possession of marihuana. Agent Ramirez never found the marihuana blunt.

Agent Ramirez took the sealed FedEx envelope to his office. With the help of another agent, Agent Ramirez prepared an affidavit so that he could attempt to obtain a search warrant for the envelope. After completing the affidavit, he applied for and obtained a search warrant to open the envelope. He opened the envelope. It contained another sealed FedEx envelope. Agent Ramirez opened this envelope. Inside the envelope, he found five plastic packages containing what field-tested to be crystal methamphetamine.

*The Trial Court's Ruling*

After the evidence was presented at the suppression hearing, appellant's counsel argued that appellant had not consented to a search of his luggage. The trial court disagreed and concluded that appellant had consented to a search of the luggage. Therefore, the trial court denied appellant's first amended motion to suppress. No findings of fact or conclusions of law were filed or requested.

*Standard of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011); *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total deference to

4

the trial court's determination of historical facts. *Valtierra*, 310 S.W.3d at 447. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*; *Garza v. State*, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007). When, as here, no findings of fact were requested or filed, we view the evidence brought forward at the suppression hearing in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record. *Valtierra*, 310 S.W.3d at 447; *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). Second, we review de novo the trial court's application of law to facts. *Hubert*, 312 S.W.3d at 559; *Valtierra*, 310 S.W.3d at 447. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Valtierra*, 310 S.W.3d at 447–48; *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

### *The Detention Was Reasonable*

In his first issue, appellant contends that the purpose of the stop was completed before Agent Ramirez questioned him about whether he had anything illegal in the vehicle. Therefore, appellant contends that he was being illegally detained when Agent Ramirez questioned him about illegal items and drugs.

Police officers may stop and detain a person if they have a reasonable suspicion that a traffic violation is in progress or has been committed. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). A traffic stop is a detention and must be reasonable under the United States and Texas Constitutions. *Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997); *Caraway v. State*, 255 S.W.3d 302, 307 (Tex. App.—Eastland 2008, no pet.). To be reasonable, a traffic stop must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Davis*, 947 S.W.2d at 245. Reasonableness is measured in objective terms by examining the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *Caraway*, 255 S.W.3d at 307.

During a routine traffic stop, an officer may check for outstanding warrants and demand identification, a valid driver's license, and proof of insurance from the driver. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App, 2004); *Caraway*, 255 S.W.3d at 307. If, during that investigation, an officer develops reasonable suspicion that another violation has occurred, the scope of the initial investigation expands to the new offense. *Goudeau v. State*, 209 S.W.3d 713, 719 (Tex. App.—Houston [14th Dist.] 2006, no pet.). When the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity."

*Davis*, 947 S.W.2d at 243 (quoting *Robinette*, 519 U.S. at 41 (Ginsburg J. concurring)). Once the officer concludes the investigation of the conduct that initiated the stop, continued detention of a person is permitted only if there is reasonable suspicion to believe that another offense has been committed. *Id.* at 245; *Caraway*, 255 S.W.3d at 308.

Reasonable suspicion must be founded on specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). Whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion is a legal question that we review de novo. *Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007).

Agent Ramirez stopped appellant for committing the traffic violation of speeding. Agent Ramirez testified that he smelled the odor of marihuana during his initial contact with appellant and that he again detected the smell of marihuana when he returned to appellant's car after checking for outstanding warrants. As the trier of fact, the trial court was entitled to believe Agent Ramirez's testimony. *Valtierra*, 310 S.W.3d at 447. Based on that testimony, the trial court could have reasonably concluded that the odor of marihuana was emanating from appellant's car when Agent Ramirez contacted appellant. The odor of marihuana provides reasonable suspicion of criminal activity to justify an investigatory detention and probable cause to justify a search of a vehicle without a warrant. *Razo v. State*, 577 S.W.2d 709, 711 (Tex. Crim. App. 1979); *Taylor v. State*, 20 S.W.3d 51, 55–56 (Tex. App.—Texarkana 2000, pet. ref'd); *Small v. State*, 977 S.W.2d 771, 774 (Tex. App.—Fort Worth 1998, no pet.). Thus, during his investigation of the traffic violation, Agent Ramirez developed reasonable suspicion that appellant had committed or was committing a marihuana offense. The continued detention of appellant was justified for the purpose of investigating this offense. *Davis*, 947 S.W.2d at 245; *Goudeau*, 209 S.W.3d at 719.

Alternatively, the trial court could have concluded that Agent Ramirez asked appellant the question about whether he had anything illegal in the car during an encounter and not an investigative detention. It is not per se unreasonable for a police officer to ask questions or request consent to search after detention for a traffic stop is completed, as long as a message is not conveyed by the officer's words or acts that compliance is required. *Caraway v. State*, 255 S.W.3d at 310–11; *Saldivar v. State*, 209 S.W.3d 275, 282 (Tex. App.—Fort Worth 2006, no pet.). The issue is whether Agent Ramirez, by word or deed, conveyed a message in a manner

6

such that a reasonable person would conclude compliance was required. *Saldivar*, 209 S.W.3d at 282. Agent Ramirez said, "[L]et me ask you a question real quick," immediately before telling appellant, "I am done with my traffic stop." Agent Ramirez also told appellant that he was going to give him a break on the traffic violation. Agent Ramirez explained that he worked for the drug task force and then asked the question, "You wouldn't have anything illegal in your vehicle, would you?" Agent Ramirez did not tell appellant that he had to answer the question. Nor did Agent Ramirez engage in any conduct indicating that appellant had to answer the question. The evidence supports a finding that Agent Ramirez did not convey a message in a manner such that a reasonable person would conclude that answering his question was required. Therefore, the trial court could have concluded that the question occurred in an encounter. Appellant's response to the question that a blunt was in the car provided Agent Ramirez reasonable suspicion to justify an investigatory detention.

Agent Ramirez did not illegally detain appellant. Therefore, appellant's first issue is overruled.

### *The Warrantless Search of the Car and Its Contents Was Reasonable*

Appellant's second through fifth issues involve Agent Ramirez's warrantless search of appellant's car and the contents in the car. In those issues, appellant contends that Agent Ramirez illegally searched the passenger compartment of the car, the trunk of the car, the luggage that was in the trunk, and the envelope containing marihuana.[1] Appellant asserts that the warrantless search was illegal because it was made without his consent.

We have summarized the evidence above. Based on that evidence, the trial court could have reasonably concluded that the search of the car and its contents was reasonable for two independent reasons: (1) that Agent Ramirez had probable cause to search the car and its contents and (2) that appellant consented to the search.

As stated above, the odor of marihuana gave Agent Ramirez probable cause to perform a warrantless search of appellant's car. *Razo*, 577 S.W.2d at 711; *Taylor*, 20 S.W.3d at 56; *Small*, 977 S.W.2d at 774. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008); *Dahlem, II v. State*, 322 S.W.3d 685, 689 (Tex. App.—Fort Worth 2010, pet. ref'd). Therefore, Agent Ramirez was

---

[1]In one part of his brief, appellant indicates that, in his fifth issue, he is challenging Agent Ramirez's search of the sealed FedEx envelope. However, appellant's brief makes clear that his second through fifth issues relate to Agent Ramirez's warrantless search of the car and its contents. Agent Ramirez did not open the sealed FedEx envelope until after he obtained the search warrant. Appellant's sixth and seventh issues relate to the search of the sealed FedEx envelope.

justified in searching the car, the passenger compartment of the car, the trunk, the luggage, and the contents in the luggage. Additionally, appellant told Agent Ramirez that he had a marihuana blunt inside the car, and Agent Ramirez found marihuana on the floorboard and in the console when he searched inside the car. These facts provided additional support for the conclusion that Agent Ramirez had probable cause to search the trunk and the luggage.

Consent to search operates as an exception to the Fourth Amendment's warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *State v. Ibarra*, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997); *Myers v. State*, 203 S.W.3d 873, 886 (Tex. App.—Eastland 2006, pet. ref'd). The consent must be voluntarily given to be considered effective, and voluntariness is a question of fact to be determined from the totality of the circumstances. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000); *Myers*, 203 S.W.3d at 886. To be valid, consent must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Carmouche*, 10 S.W.3d at 331 (quoting *Schneckloth*, 412 U.S. at 228). The United States Constitution requires the State to prove voluntariness of consent by a preponderance of the evidence. *Carmouche*, 10 S.W.3d at 331. The Texas constitution requires the State to show by clear and convincing evidence that the consent was freely given. *Id.*; *Myers*, 203 S.W.3d at 886. If the record supports a finding by clear and convincing evidence that the consent to search was freely and voluntarily given, we will not disturb that finding. *Carmouche*, 10 S.W.3d at 331.

Appellant looked for the marihuana blunt in his car but could not find it. Agent Ramirez told appellant he would find it and asked appellant to get out of the car. Agent Ramirez said that he asked appellant, "Is that okay?" and that appellant responded, "Okay." Upon Agent Ramirez's request, appellant got out of the vehicle. Agent Ramirez then searched the car. Appellant did not voice any objection to the search. Agent Ramirez also testified that he asked if he could open one of the locked suitcases and that appellant responded, "Yes." Appellant told Agent Ramirez that the key to the suitcase was with the keys in the ignition. Agent Ramirez retrieved the keys from the ignition and gave them to appellant. Appellant then told Agent Ramirez which key would open the suitcase and handed the keys back to Agent Ramirez. Agent Ramirez then opened the suitcase. While he was searching that suitcase, he found the sealed FedEx envelope. He asked appellant if he could look inside the envelope, but appellant told him that he could not. Appellant also told him that he had marihuana in the other suitcase. The other suitcase was also locked. Agent Ramirez asked appellant if he had the key to this suitcase, and appellant showed him the key that would open it. Agent Ramirez then opened the other suitcase.

As the trier of fact, the trial court was entitled to believe Agent Ramirez's testimony that appellant responded, "Okay," when Agent Ramirez said that he would find the blunt and that appellant responded, "Yes," when Agent Ramirez asked whether it was okay for him to open the lock on the first suitcase. Although these responses cannot be heard on the audio portion of the DVD, appellant's conduct was consistent with having made such responses. He showed Agent Ramirez the keys that would open the locks on the suitcases. Appellant gave no indication of any objection to the search of the car, trunk, or suitcases other than telling Agent Ramirez that he could not open the sealed FedEx package. Looking to the totality of the circumstances, the trial court could have reasonably concluded that appellant freely and voluntarily consented to the search of the car, trunk, and suitcases. Appellant's second, third, fourth, and fifth issues are overruled.

*The Search Warrant Affidavit*

In his sixth and seventh issues, appellant contends that Agent Ramirez's search warrant affidavit contained materially false statements that were made deliberately, knowingly, or with reckless disregard for the truth in violation of *Franks v. Delaware*, 438 U.S. 154 (1978), and that, therefore, the trial court erred by denying his first amended motion to suppress. Under *Franks*, a defendant who makes a substantial preliminary showing that a false statement was made in a warrant affidavit knowingly and intentionally, or with reckless disregard for the truth, may be entitled by the Fourth Amendment to a hearing, upon the defendant's request. *Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007). This hearing is required only where the false statement is essential to the probable cause finding. If, at the hearing, the defendant establishes the allegation of perjury or reckless disregard by a preponderance of the evidence, the false material in the affidavit is set aside. If the affidavit's remaining content does not then still establish probable cause, the search warrant must be voided and the evidence resulting from that search excluded. *Id.* (citing *Franks*, 438 U.S. at 155–56).

To require the trial court to hold a *Franks* evidentiary hearing and to preserve the issue for appellate review, a defendant must (1) allege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false; (2) accompany these allegations with an offer of proof stating the supporting reasons; and (3) show that, when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support the issuance of the warrant. *Harris*, 227 S.W.3d at 85–86; *Cates v. State*, 120 S.W.3d 352, 356 (Tex. Crim. App. 2003). Thus, specific

allegations and evidence must be apparent in the pleadings in order for a trial court to even entertain a *Franks* proceeding. *Harris*, 227 S.W.3d at 85.

Appellant did not meet the requirements for obtaining a *Franks* hearing in the trial court. He did not allege a *Franks* violation in his first amended motion to suppress. He also did not request a *Franks* hearing in the trial court. Appellant's counsel made no mention of *Franks* until his closing argument at the suppression hearing when he addressed the issue of whether appellant had consented to a search of the luggage. Specifically, appellant's counsel stated as follows:

> While the officer may have had probable cause to conduct a search because of this talk about marijuana, the warrant itself, unless there can be some basis upon which -- and we know what the basis is -- for the suspected party to consent to the search of the vehicle. We know what that basis is. That basis is the business just before the key was presented, which I contend demonstrates the audio was good enough to demonstrate that there wasn't consent, therefore, the affidavit that was presented to the Magistrate with respect to the FedEx envelope that later was found to contain methamphetamine contains what I believe to be a materially false statement which is of the nature of a *Franks* problem.

Appellant's counsel's mere reference to *Franks* in his closing argument did not satisfy the pleading and evidentiary requirements for obtaining a *Franks* hearing. *Harris*, 227 S.W.3d at 85. Because appellant failed to make the substantial preliminary showing required by *Franks*, he has not preserved his sixth and seventh issues for appellate review. *Harris*, 227 S.W.3d at 85–86. Additionally, we note that the evidence at the suppression hearing provides no support for appellant's contention that Agent Ramirez's search warrant affidavit violates *Franks*. Appellant's sixth and seventh issues are overruled.

### This Court's Ruling

The trial court did not abuse its discretion in denying appellant's first amended motion to suppress. The judgment of the trial court is affirmed.

TERRY McCALL
JUSTICE

May 10, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.