

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00002-CR

_____

BRADLEY LEROY THOMPSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th District Court
Upshur County, Texas
Trial Court No. 16,737

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Bradley Leroy Thompson (Appellant) was a passenger in the car of Dale Dewayne Fisher when the car was stopped for a defective license plate bulb by David Thompson (Thompson or Deputy Thompson), an Upshur County Deputy Sheriff. During a subsequent search of the vehicle, Deputy Thompson discovered a gun, suspected counterfeit currency, and suspected methamphetamine. Appellant was arrested and, in a two-paragraph indictment, charged with possession of more than four grams but less than 200 grams of a controlled substance and possession with intent to deliver. At trial, Appellant moved to suppress the evidence found in the traffic stop, arguing that his detention was improperly prolonged beyond its purpose in violation of his constitutional rights, but the trial court denied his motion. As part of a plea agreement, Appellant subsequently pled guilty to possession with intent to deliver in exchange for a thirty-year sentence. The trial court accepted the plea agreement and sentenced Appellant to thirty years' imprisonment.

On appeal, Appellant argues that the trial court erred by denying his motion to suppress. We affirm the trial court's judgment because the trial court did not abuse its discretion in denying the motion to suppress.

We review the trial court's decision to deny Appellant's motion to suppress evidence by applying a bifurcated standard of review. *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd). Since the trial court tries the facts and judges witness credibility at a suppression hearing, we defer almost totally to that court's determination of facts if supported by the record.

*State v. Ross*, 32 S.W.3d 853, 856–57 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We also defer to a trial court's ruling on questions of the application of law to fact, also known as mixed questions of law and fact, if the resolution of those questions turns on an evaluation of credibility and demeanor. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

We review de novo the trial court's applying of the law and determining questions not turning on credibility. *Graves*, 307 S.W.3d at 489; *Carmouche*, 10 S.W.3d at 332; *Guzman*, 955 S.W.2d at 89. Since all evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold the denial of Appellant's motion to suppress if it was supported by the record and was correct under any theory of law applicable to the case. *Carmouche*, 10 S.W.3d at 328; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). In determining whether a trial court's decision is supported by the record, we generally consider only evidence from the suppression hearing rather than evidence introduced later at trial. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

Police officers may stop and detain a person if they reasonably suspect that a traffic violation is in progress or has been committed. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). A traffic stop is a detention and must be reasonable under the United States and Texas Constitutions. *See Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997); *Caraway v. State*, 255 S.W.3d 302, 307 (Tex. App.—Eastland 2008, no pet.). To be reasonable, a traffic stop must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Davis*, 947 S.W.2d at 245. Reasonableness is measured in

3

objective terms by examining the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *Spight v. State*, 76 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2002, no pet.). An investigative stop that is reasonable at its inception may violate the Fourth Amendment because of excessive intensity or scope. *Davis*, 947 S.W.2d at 243 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

In the course of a routine traffic stop, the detaining officer may request a driver's license or identification, car registration, and insurance information; may use that information to conduct a computer check for outstanding arrest warrants; may question the vehicle's occupants regarding their travel plans; and may issue a citation. *Kothe v. State*, 152 S.W.3d 54, 63 n.36 (Tex. Crim. App. 2004); *Caraway*, 255 S.W.3d at 307; *Davis*, 947 S.W.2d at 245 n.6. If, during that investigation, an officer develops reasonable suspicion that another violation has occurred, the scope of the initial investigation can expand to include the new offense. *Goudeau v. State*, 209 S.W.3d 713, 719 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Reasonable suspicion must be based on specific, articulable facts which, when combined with rational inferences from those facts, would lead the officer to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010).

When the reason for the stop has been satisfied, the stop must end and may not be prolonged to conduct a "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 243 (quoting *Robinette*, 519 U.S. at 41 (Ginsburg, J., concurring)). Once the officer concludes the investigation of the conduct that triggered the stop, continued detention of a person is permitted only if there is reasonable suspicion to believe that another offense has been or is being committed. *Id*. at 245. Nevertheless, "[t]here is . . . no constitutional stopwatch on traffic stops. Instead, the

4

relevant question in assessing whether a detention extends beyond a reasonable duration is 'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly.'" *Haas v. State*, 172 S.W.3d 42, 51–52 (Tex. App.—Waco 2005, pet. ref'd) (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)); *see also Sharpe*, 470 U.S. at 685–86 (declining to "establish a per se rule that a 20-minute detention is too long" under *Terry*); *Kothe* 152 S.W.3d at 64–65 ("The Supreme Court has expressly rejected placing a rigid time limitation on *Terry* investigative detentions.").

Deputy Thompson testified that, on December 30, 2013, while patrolling U.S. Highway 259 near New Diana, Texas, he observed a 2002 GMC Yukon with a defective license plate light.[1] Thompson activated his overhead lights and pulled the car over. The driver was slow to pull over, passing by several well-lit parking lots and finally stopping in a dark location. Thompson approached the driver's side window and spoke with the occupants. He asked for their identification. The passenger, Appellant, produced a State-issued identification card, but Fisher, the driver, could not locate his driver's license. Fisher gave Deputy Thompson his name and date of birth instead. Fisher told the deputy that he and Appellant were driving from Houston to New Boston.

Deputy Thompson testified that Fisher was initially calm and that nothing seemed suspicious or out of the ordinary during this initial interaction. Thompson obtained the identifying information from both men, forwarded it to dispatch, determined that there were no outstanding

---

[1]Fisher does not challenge the propriety of the initial traffic stop.

warrants, and determined that the car was not stolen. Although neither occupant had outstanding arrest warrants, both had a "lengthy history of narcotics and other offenses."

Deputy Thompson called for another officer, returned to the Fisher vehicle, and asked Fisher to exit the vehicle and step to the back of the car, where he asked Fisher a few follow-up questions regarding his travel history and destination. As Fisher complied with Thompson's request, the deputy noticed that Fisher was "getting nervous" and increasingly sweating to the point he was "drenching with water" and "steadily wiping sweat from his head." The officer remembered that the temperature that night was in the "mid or upper twenties, low thirties," and it was windy and cold.

Deputy Thompson then questioned Fisher about where he was driving from, when he left, and where he was going. In response, Fisher stated that he was driving from Houston to New Boston and that he had left Houston between 2:00 and 3:00 p.m. that day. The deputy testified that Highway 259 is a major traffic corridor for illegal narcotics. He also testified that, when he spoke with Fisher at the rear of his vehicle, he smelled burned marihuana on Fisher's clothing. Fisher denied having anything illegal in his car and denied his consent to search the vehicle. Thompson informed him that he was going to perform a free-air search of the car with the K-9 he had in his patrol vehicle. However, before performing the K-9 search, with Fisher at the vehicle's rear, Thompson had Appellant get out and walk to the front of the car, where he separately asked Appellant regarding his travel history and destination.

Appellant told the deputy that the pair had left Houston between 12:00 and 1:00 p.m. that day. Appellant said he did not know if there was anything illegal in the car, but said that they had stopped at Nacogdoches and Longview on their way.

Deputy Thompson retrieved his drug-sniffing dog, Chiva, from his patrol car. He had the dog perform an open-air search of the car. He testified that Chiva gave a positive alert on the driver's window, and after being let into the car, gave another positive alert on the center console. In the center console, Deputy Thompson found a pistol, suspected counterfeit currency, and a substance later determined to be methamphetamine. Fisher and Appellant were arrested at that point.

Appellant contends that the trial court should have suppressed the evidence found in the car because, at the time Fisher was ordered out of the car, their continued detention by the police was without sufficient cause, rendering the later search of his vehicle invalid.[2] We disagree.

Here, the original purpose for the traffic stop was to investigate the defective license plate bulb. During the course of that stop, Thompson was permitted to obtain the occupants' driver's licenses or identification, the car registration, and proof of insurance and then use that information to check for outstanding arrest warrants. *See Caraway*, 255 S.W.3d at 307; *Davis*, 947 S.W.2d at 245 n.6. Even though Thompson had talked to Fisher twice before he questioned Appellant, Thompson was entitled to question both of them regarding their travel plans. *See Kothe*, 152

_____

[2]Appellant does not dispute that, by the time Thompson had finished questioning Fisher and him about their travel plans, Thompson had sufficient articulable facts to establish reasonable suspicion that a drug offense was occurring or had occurred, which justified Appellant's continued detention and the subsequent search of the car. Therefore, we need not address these issues.

S.W.3d at 63 n.36. Though Thompson questioned Appellant after checking Fisher and him for warrants, there is no requirement that an officer perform a traffic stop investigation in any particular order. *See id.* at 63–64, 65. Therefore, the original traffic stop investigation ended when Thompson questioned Appellant about his travel, because even though Thompson had already completed the warrant and identification checks, his further questioning of Fisher and Appellant regarding their travel history was related to the traffic stop and did not unduly prolong Fisher's detention.[3] For the foregoing reasons, the trial court was within its discretion to deny Appellant's motion to suppress.

---

[3]In *Kothe*, the Texas Court of Criminal Appeals held that, although the sequence of events is "relevant to the legal determination of 'reasonableness,' [it] is not in itself determinative'" and that "Fourth Amendment 'reasonableness' does not require a 'single, formulaic approach' to a traffic stop investigation, nor does it require rigid adherence to 'the least intrusive means' of investigation defined by Monday-morning reviewing courts." *Kothe*, 152 S.W.3d at 66 (citing *Brigham v. State*, 382 F.3d 500, 511 (5th Cir. 2004)). Yet, the Court of Criminal Appeals also noted,

> In the present case, there is no evidence—or even suggestion—that Deputy Forslund failed to diligently pursue his investigation. Nor is there any evidence that Officer Forslund ran the license check as a pretext to investigate an unrelated crime for which he had no reasonable suspicion. There is no suggestion that he engaged in any "fishing expedition." Quite the contrary, the trial judge in his factual findings was careful not to give that impression.

*Id.* Even though an officer is not required to perform traffic stop procedures in a particular order, in *Kothe* the court suggested that an officer's choice of sequence to perform the permissible functions could unreasonably prolong a traffic stop sufficient to constitute a Fourth Amendment violation. But just as in *Kothe*, there is no indication here that Thompson's choice of sequence unreasonably prolonged Fisher's and Appellant's traffic stop.

8

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     September 8, 2015
Date Decided:       November 19, 2015

Do Not Publish