**Affirmed and Memorandum Opinion filed January 11, 2024.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-22-00648-CR

**ARIEL ALEJANDRO DOMINGUEZ-RAMIL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 20-DCR-090737**

## MEMORANDUM OPINION

Appellant Ariel Alejandro Dominguez-Ramil appeals an order of deferred adjudication for fraudulent possession or use or a credit or debit card. *See* Tex. Penal Code § 32.31. After the trial court denied appellant's motion to suppress, appellant pleaded guilty to the offense, the trial court deferred adjudication of guilt, and placed appellant on deferred adjudication community supervision for five years. In two issues, appellant challenges the trial court's denial of the motion to suppress, arguing that a police officer lacked reasonable suspicion by unnecessarily prolonging a valid

traffic stop. We affirm.

On February 19, 2020, Officer Emily Wiley of the Katy Police Department was patrolling in Fort Bend County when she saw a Nissan Altima with an expired registration. Wiley entered the car's license plate number into her patrol vehicle's mobile data terminal (MDT) and received information confirming that the registration had expired in 2018. Wiley initiated a traffic stop for the expired registration.

After stopping the car Wiley approached the driver, whom she identified as appellant, and informed him of the reason for the traffic stop. Wiley asked appellant for identification, and he provided a Florida driver's license. Wiley asked appellant where he was coming from. Appellant told Wiley he was coming from a commercial vehicle property (truck yard) located on Porter Road. Wiley described the truck yard as a lot where drivers park "18-wheelers" and "do business in and out of there." Appellant told Wiley the truck yard was his lot. Wiley asked appellant two or three times whether he owned the truck yard lot, and he responded that he did.

The day before the traffic stop of appellant, Wiley participated in a police investigation of individuals using gift cards re-encoded with credit card information to commit fuel theft. The fuel-theft investigation centered around the truck yard located on Porter Road from which appellant said he was driving.

After receiving appellant's driver's license, Wiley walked back to her patrol car to run a warrant check on appellant's license. Wiley received information, both from the MDT and a police dispatcher, reflecting that the Florida driver's license was expired. Believing that appellant may have a connection to the fuel-theft investigation, while at her patrol car, Wiley phoned the detective who had been

overseeing the investigation.

After receiving information about the expired driver's license and speaking with the detective, Wiley arrested appellant for Class C misdemeanor traffic violations. Wiley explained to appellant that he was being arrested for failure to carry insurance coverage and for an expired registration. Wiley searched appellant incident to the arrest and recovered a cigarette package, which contained ten gift cards. Wiley took possession of the gift cards and placed appellant in the back seat of her patrol car.

Another officer arrived at the scene to assist Wiley and took custody of the gift cards. Wiley learned that the assisting officer used a card reader to determine the information contained on the recovered gift cards.

Appellant filed a motion to suppress all evidence seized as a result of the arrest and search arguing that both were without a valid warrant, reasonable suspicion, or probable cause. In the trial court appellant argued that Wiley unlawfully prolonged the stop without reasonable suspicion of a crime other than the traffic stop.

After the trial court denied appellant's motion to suppress, appellant entered a guilty plea in exchange for an order of deferred adjudication. Appellant timely appealed the denial of his motion to suppress.

## ANALYSIS

On appeal appellant asserts Officer Wiley unlawfully prolonged the traffic stop, rendering any evidence gathered unlawfully obtained and therefore inadmissible.

## I. Standard of Review and Applicable Law

We review a trial court's denial of a motion to suppress evidence under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim.

3

App. 2018). At the hearing on the motion, the trial court is the sole factfinder and judge of the credibility of the witnesses and of the weight to be given their testimony. *Id*. at 190. We therefore afford almost complete deference to the trial court's determinations of historical facts. *Id*. But we review de novo the legal significance of the facts found by the trial court. *Id*.; *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017).

We must view the evidence in the light most favorable to the trial court's decision on the motion. *State v. Garcia*, 569 S.W.3d 142, 152–53 (Tex. Crim. App. 2018). When, as here, the trial court does not make explicit findings of fact, we presume that the court made implicit findings of fact, if supported by the record. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). We sustain the trial court's decision on the motion if it is correct under any applicable theory of law. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018). We may reverse only when the decision is arbitrary, unreasonable, or outside the zone of reasonable disagreement. *Id*.

The Fourth Amendment to the United States Constitution protects individuals from unreasonable seizures, and evidence obtained as a result of an unreasonable seizure may be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963). When police officers signal that a driver should stop a moving vehicle, and in response the driver stops the vehicle, then the vehicle's occupants have been seized under the Fourth Amendment. *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *see also Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (a police car's flashing lights and pursuit constitute a "show of authority" required for a Fourth Amendment seizure). The seizure continues for the duration of the traffic stop, and the seizure terminates when the police inform the driver and any passengers that they are free to leave. *See Johnson*, 555 U.S. at 333.

4

Because a routine traffic stop is a detention, the stop must be reasonable under both the United States and Texas constitutions. *See Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). To be reasonable, a traffic stop must be temporary and last no longer than necessary to effectuate its original purpose. *Ohio v. Robinette*, 519 U.S. 33, 50 (1996); *see also Terry v. Ohio*, 392 U.S. 1, 19–20 (1968). On a routine traffic stop, an officer may inquire into matters unrelated to the stop as long as the stop is not unreasonably extended. *See Branch v. State*, 335 S.W.3d 893, 900 (Tex. App.—Austin 2011, pet. ref'd). Police officers may also request certain information from a driver, such as license and car registration, and may conduct a computer check on that information. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). It is only after this computer check is completed, and the officer knows that the driver has a currently valid license, no outstanding warrants, and the car is not stolen, that the traffic stop is fully resolved. *Id*. An officer may ask the driver about matters unrelated to the purpose of the stop so long as the questioning does not measurably extend the duration of the stop. *Lerma*, 543 S.W.3d at 190; *see also Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015).

An officer's authority for the stop ends when tasks related to the traffic infraction are, or reasonably should be, completed. *Rodriguez*, 575 U.S. at 354, 135 S.Ct. 1609; *see also Lerma*, 543 S.W.3d at 191. However, if an officer develops reasonable suspicion that an occupant of a vehicle is involved in criminal activity, the officer may continue questioning the person regardless of whether the tasks related to the traffic stop have come to an end. *See Lerma*, 543 S.W.3d at 191; *see also Rodriguez*, 575 U.S. at 355; *Villarreal v. State*, 631 S.W.3d 198, 201 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

## II.   The traffic stop was not unlawfully prolonged.

Appellant concedes the initial traffic stop was valid, but asserts in two issues

that the stop was unlawfully prolonged because Officer Wiley (1) repeated extraneous questions concerning appellant's employment and occupation; and (2) phoned a detective who was supervising the fuel-theft investigation.

During a traffic stop, an officer has the right to ask the driver for identification, a valid driver's license, information concerning ownership of the vehicle, proof of insurance, and information concerning the destination and purpose of the trip. *Kothe*, 152 S.W.3d at 63; *Caraway v. State*, 255 S.W.3d 302, 307 (Tex. App.—Eastland 2008, no pet.). The officer may also check for outstanding warrants. *Kothe*, 152 S.W.3d at 63. While the officer is awaiting a computer warrant check, questioning about matters unrelated to the initial traffic stop does not violate the Fourth Amendment because such questioning does not extend the duration of an initial valid stop. *Id.* at 63–64. An officer making a traffic stop is not required to investigate the situation in a particular order. *Id.* at 65. Only if the investigation "unduly prolongs" the detention is the officer's action unreasonable under the circumstances. *Id*.

Within two minutes of being stopped, appellant admitted his car registration was expired and that he did not carry liability insurance on the car. He also told Wiley he parked his truck at a truck yard, which Wiley understood appellant to say he owned. At that time Wiley had completed her investigation into the car's expired vehicle registration and appellant's failure to maintain liability insurance but had not yet begun a driver's license or warrants check on her mobile terminal. Appellant asserts Wiley's "detour" into questioning about appellant's connection to the truck yard and phoning the detective on the fuel-theft cases unlawfully prolonged the traffic stop.

The trial court's contrary conclusion, however, is supported by the record. According to Wiley's body-worn camera, she stopped appellant's car for an expired

registration at 11:25 a.m.[1] and began questioning him immediately. Wiley asked appellant why he was driving a car with an expired registration. Appellant responded that he used the car for work. Wiley asked appellant what work he did, and appellant responded that he was a truck driver. Wiley asked appellant where his truck was located, and he responded that the truck was in the truck yard on Porter road. Appellant told Wiley, "That's my yard." Wiley asked, "You own that entire yard?" and appellant responded, "Yes." This exchange took less than two minutes. At 11:27 a.m., Wiley walked back to her patrol car to check for outstanding warrants and phoned the detective in the fuel-theft case. The detective instructed Wiley to arrest appellant on the traffic violations. At 11:31, Wiley requested that appellant step out of his car and put his hands behind his back. At 11:32, appellant was handcuffed, and Wiley explained that she was arresting him for expired registration and failure to carry liability insurance.

Once appellant admitted that his registration was expired and he did not have liability insurance on the car, Wiley developed probable cause to arrest appellant. *See* Tex. Transp. Code § 521.025 (driver's license); *Id.* § 601.051 (requirement of financial responsibility); *State v. Gray*, 158 S.W.3d 465, 469 (Tex. Crim. App. 2005) ("Such an arrest for a minor traffic offense is not an unreasonable seizure under the Fourth Amendment.") Because Wiley had probable cause to arrest appellant for expired registration and failure to carry liability insurance, she could search appellant incident to an arrest. *See Williams v. State*, 726 S.W.2d 99, 100–01 (Tex. Crim. App. 1986) (upholding search incident to arrest because the officer had

---

[1] When reviewing the video evidence, it appears there may be a minor discrepancy in the start time between Wiley's body-worn camera, the patrol car's dashboard camera, and the MDT log. The dashboard camera showed the stop occurring at approximately 11:35 a.m. The MDT log shows the stop was initiated at 11:32 a.m. Because we are reviewing the elapsed time of the detention, not the start time, for purposes of this analysis, we refer to times shown on the body-worn camera video.

probable cause to arrest for a parking violation; fact that the officer "was investigating what he took to be a narcotics transaction is of no moment in this case" because the officer's failure to have "the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action") (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978))).

Wiley did not unreasonably extend the traffic stop because she was conducting the investigation when appellant admitted that he owned the truck yard. *See Lerma*, 543 S.W.3d at 190–91 (there is no per se rule that an officer must immediately conduct a computer check on the driver's information before questioning the occupants of the vehicle about matters unrelated to the purpose of the stop, so long as the questioning does not measurably extend the duration of the stop).

Appellant relies on the United States Supreme Court decision in *Rodriguez v. United States* in asserting that Wiley unlawfully prolonged the traffic stop. 575 U.S. at 354–55. In *Rodriguez*, Officer Morgan Struble stopped Rodriguez for driving on the highway shoulder, a violation of Nebraska law. *Id*. at 351. Struble approached the vehicle, advised Rodriguez why he was stopped, and asked why Rodriguez had driven onto the shoulder. *Id*. Struble gathered Rodriguez's license, registration, and proof of insurance, and ran a computer check on Rodriguez. *Id*. After running the computer check and determining that neither Rodriguez nor his passenger had outstanding warrants, Struble issued a written warning 21 minutes after the officer initially stopped the car. *Id*. at 352.

After the warning was issued and Struble returned the documents to Rodriguez and the passenger, Struble asked permission to walk his dog around Rodriguez's vehicle. *Id*. Rodriguez said no. *Id*. Despite Rodriguez's refusal, Struble

walked his dog around Rodriguez's car. *Id*. The dog alerted to the presence of drugs; a bag of methamphetamine was found in the car. *Id*. In total, seven or eight minutes elapsed from the time the officer issued the warning until the dog indicated the presence of drugs. *Id*.

Rodriguez challenged the legality of the search, arguing that the officer had unduly prolonged the traffic stop without reasonable suspicion to conduct the dog sniff. *Id*. The Supreme Court agreed. It held that a seizure justified only by a police-observed traffic violation becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation. *Id*. at 355–56.

The facts of this case are distinguishable from those in *Rodriguez* in that Wiley's actions in questioning appellant and running a driver's license check are similar to Struble's actions before Struble issued the written traffic warning. Wiley did not ask about appellant's connection to the truck yard until he told her that his truck was parked there, and he said, "That's my yard." Wiley initially questioned appellant's decision to drive a car with an expired registration. Appellant answered that he ordinarily drove a truck for work and that his truck was parked at the truck yard, which he claimed to own. Wiley had not run a warrants check when she called the detective two minutes after stopping appellant. Appellant asserts that Wiley was obligated to "move[] along to the business of completing the driver's license and warrant check on Appellant's Florida driver's license, then writing a traffic ticket, arresting defendant, or issuing a warning[.]" Wiley did exactly that when she arrested appellant for the traffic violations, just seven minutes after stopping him.

Thus, the record does not support appellant's contention that Wiley's questions and phone call prolonged the stop beyond the time reasonably required to complete the mission of the stop. *See Rodriguez*, 575 U.S. at 354–55; *see also Lerma*,

9

543 S.W.3d at 190–91. From the time Wiley stopped appellant's car, asked him about registration, insurance, and his driver's license, phoned the detective, and arrested appellant, seven minutes elapsed. Therefore, Wiley did not unconstitutionally prolong appellant's detention in violation of the Fourth Amendment. *See Kothe*, 152 S.W.3d at 66 ("Viewing the totality of the circumstances in the light most favorable to the trial court's factual findings, Deputy Forslund's decision to return to his vehicle and simply wait a few minutes for the warrant-check results before releasing Mr. Kothe was 'reasonable' as a matter of substantive Fourth Amendment law.").

The trial court did not abuse its discretion in denying appellant's motion to suppress. We overrule appellant's two issues.

## CONCLUSION

Having overruled appellant's issues on appeal we affirm the judgment of conviction.

/s/     Jerry Zimmerer
          Justice

Panel consists of Justices Wise, Zimmerer, and Poissant.

Do Not Publish — Tex. R. App. P. 47.2(b).